UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO.  09-cr-00275-01 |
| VERSUS | JUDGE WALTER |
| TRAVIS C. DAVIS | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Before the court is Defendant's Motion to Suppress (Doc. 23).  For the reasons that follow, it is recommended that Defendant's motion be denied.

### Facts

An evidentiary hearing was held on January 29, 2010.  The evidence shows that Sgt. Keith Banta of the DeSoto Parish Sheriff's Office Tri-Parish Drug Task Force, assisted by Task Force Agent Raymond Sharrow, was conducting an investigation into Defendant's suspected drug-trafficking activities.  In connection with their six-month investigation, the agents obtained information on Defendant from multiple confidential sources, personal surveillance, other law enforcement agencies, other arrested suspects, and Crime Stoppers.

The information obtained by the agents indicated that Defendant was a mid-level dealer of crack cocaine and that he was in possession of at least one handgun.  While the officers believed that some of Defendant's drug-dealing activities took place on the street, they believed that most of his operation was conducted out of his residence.

One confidential reliable source informed Agent Banta that Defendant maintained video surveillance of the driveway area and the primary door to his home. Agent Banta had been to Defendant's house before in connection with the suspected theft of a generator, and Banta personally observed that Defendant maintained a number of pit bulls around the perimeter of his home.

On August 5, 2009, Agent Banta was in his office preparing a search warrant for Defendant's residence. Banta had just received information from a confidential reliable source[1] that Defendant had, within the last 24 hours, been seen in Defendant's residence in possession of a large, black, plastic trash-bag containing crack cocaine cookies.

Purely by coincidence, Banta overheard on his police radio that Defendant and his wife were being arrested on domestic violence charges. Banta did not have advance notice that Defendant was going to be arrested on domestic violence charges, and he did not participate in that arrest. Banta believed that the arrest of Defendant and his wife would allow for a safer opportunity for the officers to conduct a search of Defendant's residence. Banta also believed that the arrest of Defendant provided an opportunity to recover "a greater yield" of evidence than if Defendant was present at the residence during the search. Banta immediately dispatched two patrol deputies in marked units to secure Defendant's residence

---

[1] Defendant filed a motion to reveal the identity of the CRS. While the undersigned allowed Defendant to fully cross-examine the officers regarding the CRS, the undersigned did not – in order to protect the safety of the CRS – allow Defendant to learn the identity of the CRS during the hearing. The identity of the CRS is not critical to a resolution of Defendant's motion to suppress.

and keep other persons off of the property until the warrant was signed. Banta quickly completed his work on the search warrant application and presented the warrant to a state court judge. The judge signed the warrant.

Within about 30 minutes of learning of Defendant's arrest, Agents Banta and Sharrow began executing the warrant. Sharrow quickly discovered a hole in the wall of one room, and concealed inside that hole was a black, plastic trash-bag containing crack cocaine cookies and a loaded handgun.

**Law and Analysis**

Defendant argues that the evidence seized from his residence pursuant to the search warrant should be suppressed because the warrant is not supported by probable cause. Defendant also argues that the affidavit in support of the warrant contained false, unreliable, and stale information, or information that was submitted to the judge with reckless disregard for the truth.

A valid search warrant may be issued only upon a finding of probable cause. United States v. Brown, 941 F.2d 1300, 1302 (5th Cir.1991). The information necessary to show probable cause must be contained within a written affidavit given under oath. Id. Probable cause does not require proof beyond a reasonable doubt; a judge need only have a substantial basis for concluding that a search would uncover evidence of wrongdoing. Id. Whether probable cause exists requires a practical, common-sense determination of whether the circumstances, including information obtained from an informant, establish that there was

a fair probability that contraband or evidence of a crime will be found in a particular place. United States v. Steele, 2009 WL 4039444 (5th Cir. 2009). A judge's probable cause determination is entitled to deference by reviewing courts. Brown, supra.

The defendant who challenges a search must show the warrant to be invalid by a preponderance of the evidence. United States v. Richardson, 943 F.2d 547, 548-549 (5th Cir. 1991). Initially, the defendant must make a prima facie showing of illegality. Id. The Government must then present rebuttal evidence. However, the burden of persuasion remains at all times with the defendant. Id. at 549.

The affidavit in this case clearly provides probable cause to search Defendant's residence for evidence of illegal drug trafficking. The information from the affidavit is briefly summarized below:

| | |
|---|---|
| Para. 1: | Agent Banta is an experienced law enforcement officer with approximately 20 years of experience in narcotics investigations. |
| Para. 2: | Banta received information from a Confidential Reliable Source ("CRS"). |
| Para. 3: | The CRS has provided Banta with direct information regarding Defendant's criminal activity for the past six months. |
| Para. 4: | Banta and other officers have received information for over six months about illegal drug activity at Defendant's residence. |
| Para. 5: | Defendant is believed to have a large amount of crack cocaine cookies and scales in a black, plastic trash-bag in Defendant's residence. |
| Para. 6: | The CRS saw the black trash-bag containing the crack cocaine cookies at Defendant's residence within the last 24 hours. The drugs were received by Defendant within the last 48 hours, and Defendant was |

      seen with the drugs within the last 24 hours. The CRS has provided timely and credible information regarding Defendant that was deemed credible when investigated by the agents. The CRS's information is consistent with surveillance of Defendant's residence by agents where dealers and users of cocaine have been observed coming and going from the residence. Based on the agent's six month investigation, most of Defendant's drug activity centers around Wednesdays and Thursdays of each week when Defendant typically obtains deliveries of drugs from Natchitoches, Louisiana.

Para. 7:  The agents have received information regarding Defendant from multiple sources, including confidential reliable sources, Crime Stoppers, anonymous calls, and other law enforcement agencies.

Para. 8:  The CRS is familiar with drugs, including crack, and knows how they are stored, used, consumed, and packaged.

Para. 9:  The CRS saw Davis in possession of the drugs. The drugs were stored in Defendant's house in the black trash-bag.

Para. 10:  Further information regarding the CRS or as to times, dates, amounts, and individuals involved would tend to reveal the identity of the CRS, which would endanger the safety of the CRS and hamper ongoing and future criminal investigations.

The information is timely – the CRS saw the drugs at Defendant's house in the last 24 hours. The information is precise – the crack cocaine cookies were concealed in a black, plastic trash-bag inside Defendant's residence. The information was reliable – the agents had verified information from this CRS, and the current information from the CRS was consistent with Defendant's recent pattern of drug trafficking behavior.

  Based on the information in the affidavit, there was more than a fair probability that illegal drugs were stored in Defendant's residence. Accordingly, the affidavit provides probable cause for the issuance of the search warrant.

Even if the affidavit fell short of establishing probable cause, Agents Banta and Sharrow acted in objective good faith in relying of the warrant. Accordingly, the evidence is still admissible. United States v. Stalnaker, 571 F.3d 428 (5th Cir. 2009); United States v. McCray, 2009 WL 4034649 (5th Cir. 2009). The good faith exception does not apply if: (1) the judge was misled by information that the affiant knew was false or would have known but for reckless disregard of the truth; (2) the judge wholly abandoned his judicial role; (3) the affidavit is so lacking in indicia of probable cause so as to render a belief in the existence of probable cause entirely unreasonable; or (4) the warrant is so facially deficient in particularizing the place to be search or the things to be seized that officers cannot presume it to be valid. Stalnaker 57 f.3d at 435-436. Whether the good faith exception applies depends on an examination of the affidavit and all of the circumstances surrounding the issuance of the warrant. United States v. Payne, 341 F.3d 393, 400 (5th Cir. 2003).

There is no credible evidence that the agents submitted false or misleading information to the state court judge or that the agents acted with reckless disregard for the truth. The affidavit of Jessie Henderson (which was accepted by the court without objection when Mr. Henderson, who had been subpoenaed, left the courthouse before he was called to testify) only establishes that Mr. Henderson was with Defendant on the day prior to his arrest, and Mr. Henderson did not observe Defendant engage in drug dealing during that time.

The testimony of Defendant's mother-in-law, Sharon Evans, also does not cast any doubt on the information in the affidavit. Ms. Evans testified she went to Defendant's residence as soon as she heard that Defendant and his wife (her daughter) had been arrested. She stated that she arrived before any of the officers, but the house was locked. When the officers arrived, Ms. Evans left the residence per the instructions of the officers.

Defendant also makes too much of the fact that the warrant was obtained on a Wednesday, and the application for the warrant refers to a pattern of drug activity of Wednesdays and Thursdays. The pattern merely provides additional corroboration for the information provided by the CRS. It does not prove the falsity of the CRS's information.

**Conclusion**

The affidavit in support of the search warrant provided probable cause to justify the issuance of the warrant. In any event, the officers relied on the warrant in objective good faith. Accordingly, Defendant's motion to suppress has no merit. The motion should be denied.

Accordingly;

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 23) be denied**.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this

Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 45(b). A party may respond to another party's objections within **seven (7) days** from the filing of the objections. Counsel are directed to furnish a paper courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 17th day of February, 2010.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE